## Commonwealth v. Ruch

*Stephen G. Heckman*, Assistant District Attorney, for the Commonwealth.

*Sharon M. Erwin*, for the Equitable Publishing Co. & Geoff Patton.

STEFAN, *J.*, January 12, 1984—On June 25, 1982, an automobile accident on Route 73 in Worcester Township, Montgomery County, resulted in the death of one person. On June 26, 1982, an article about the accident and one photograph of the scene appeared in "The Reporter," a daily newspaper in Lansdale, Montgomery County. The driver of the vehicle was subsequently charged with homicide by vehicle. On December 28, 1983, Geoff Patton, a photographer employed by "The Reporter," was served with a subpoena directing him to appear at the office of the Montgomery County District Attorney and to bring with him "photographs of an accident taken on June 25, 1982." As a result of a motion to quash subpoena filed by Patton and Equitable Publishing Company, publisher of "The Reporter," by order dated January 5, 1984, the Honorable William H. Yohn, Jr., decreed:

". . .Geoff Patton may not be subpoenaed to appear or testify in this matter anywhere other than at a formal court proceeding and that if so subpoenaed, neither he nor The Equitable Publishing Company may be asked to do more than produce and identify prints of any photographs of an automobile accident taken by Geoff Patton on June 25, 1982 of objects which are in plain view in or from public areas and which do not show any persons who are or may be sources of information to The Equitable Publishing Company or its employees in connection with the automobile accident."

On January 6, 1984, the district attorney served a second subpoena on Patton directing him to appear as a witness at trial on January 9, 1984 and to bring with him "all photographs of an automobile accident on June 25, 1982 which do not show any persons who are sources of information to Equitable Publishing Company or its employees in connection

with the automobile accident." In response, Equitable and Patton filed the motion to quash the subpoena duces tecum at issue here.

Equitable and Patton contend the materials sought by the Commonwealth are privileged under the Pennsylvania Shield Law, 42 Pa.C.S.A. §5942. This statute is captioned "Confidential Communications to News Reporters" and provides:

(a) General rule. — No person engaged on, connected with, or employed by any newspaper of general circulation or any press association or any radio or television station, or any magazine of general circulation, for the purpose of gathering, procuring, compiling, editing or publishing news, shall be required to disclose the source of any information procured or obtained by such person, in any legal proceeding, trial or investigation before any government unit.

Equitable and Patton claim the photographs in question, as sources of information, are totally privileged from disclosure. This argument is based on the holding of the only Pennsylvania Supreme Court case to interpret the Shield Law, Taylor and Selby Appeals, 412 Pa. 32 (1963), in which the court said: "The common and approved meaning or usage of the words 'source of information' includes documents as well as personal informants." Id. at 40. The court referred to the Oxford English Dictionary definition of source: "not only the identity of the person but likewise documents, inanimate objects and all sources of information." Id. at 40. (emphasis in original). In case of doubt, the court noted, "the Statute must be liberally construed in favor of the newspapers and news media." Id. at 40. Despite this broad language, we do not believe the photographs sub judice are protected by the Shield Law. The Taylor case involved records containing infor-

mation obtained by reporters from disclosed and undisclosed informants. The court refused to require production of documents and tape recordings evidencing what a disclosed informant had said even with all other names deleted, for fear that the deleted documents might reveal the identity of secondary, undisclosed sources. The court took judicial notice of the fact that important information, tips and leads will dry up and the public will be deprived of necessary knowledge unless newsmen are able to protect fully and completely the sources of their information. Id. at 41. Reporters' notes and memoranda have received the Shield Law's protection in other lower court and federal cases. Hepps v. Philadelphia Newspaper, Inc., 3 D. & C. 3d 693 (1977); McEwen v. Bulletin Company, 12 D. & C. 3d 428 (1979); Pesavento v. Wilkes-Barre Independent Co., 13 D. & C. 3d 216 (1979); LAL v. CBS, Inc., 551 F. Supp. 364 (E.D. Pa. 1982). In Steaks Unlimited, Inc. v. Deaner, 623 F.2d 264 (3d Cir. 1980), the "outtakes" of a television interview were held to be privileged from disclosure. Equitable and Patton contend their unpublished photographs are equivalent to an unaired video tape. However, it is clear the "outtakes" of a television interview with a source, as in Steaks, supra, are instead analogous to reporters' notes.

There is a fundamental difference between the memoranda and interview notes of a reporter and the instant photographs. Patton did not obtain the pictures as the result of a tip, lead or inside information from a source. In accordance with Judge Yohn's order of January 5, 1984, the photographs to be produced are "of objects which are in plain view in or from public areas." In sum, we conclude the materials demanded in the subpoena do not constitute "confidential communications to news report-

ers" or a "source of information" within the ambit of the Shield Law and are not protected against compelled disclosure.

Equitable and Patton next argue the photographs are protected from disclosure by the First Amendment to the United States Constitution. They cite two cases from the Court of Appeals for the Third Circuit which discuss the media's qualified privilege not to divulge confidential sources. Riley v. City of Chester, 612 F. 2d 708 (1979); U.S. v. Cuthbertson, 630 F. 2d 139 (1980), cert. denied, 449 U.S. 1126 (1981). We reject this analysis because, as discussed supra, the pictures sought by the Commonwealth in this instance are not the product of confidential information. Instead, we look to the U.S. Supreme Court case of Zurcher v. Stanford Daily, 436 U.S. 519 (1978). There a staff member of the Stanford University student newspaper took photographs of a violent demonstration which left nine police officers injured. The State secured a warrant to search the newspaper's office for negatives, photographs and film, in hopes of obtaining pictures of the assault on the police. The warrant affidavit contained no allegation that members of the paper's staff were involved in the unlawful acts. The newspaper urged the court to adopt a "nearly per se rule forbidding the search warrant [for First Amendment reasons] and permitting only the subpoena duces tecum." Id. at 563. (emphasis added). The instant subpoena duces tecum, limited as it is, is far less disruptive of the newspaper's operations, less likely to cause confidential sources of information to dry up, less likely to deter reporters from recording their recollections for future use, less likely to chill the processing and dissemination of news, and less likely to result in self-censorship than the warrant and search deemed constitutional

in Zurcher. Accordingly, we reject Equitable and Patton's First Amendment claim and enter the following.

## ORDER SUR MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER

And now, this January 12, 1984, after argument and consideration of briefs, the motion of Equitable Publishing Company and Geoff Patton to quash subpoena and for protective order is denied.